IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHANIEL LEROY ELLIOTT,<br>    Plaintiff,<br><br>vs.<br><br>THOMAS F. GEHRET, *et al.*,<br>    Defendants. | )<br>)<br>)<br>) Civil Action No. 20-6331<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Nathaniel Leroy Elliott has filed the *pro se* complaint at Doc. No. 1 alleging that the Defendants caused him to be incarcerated from February 28, 2011 to August 15, 2018. He has further alleged that he was not incarcerated pursuant to lawful process but was kidnapped and hospitalized/imprisoned in violation of his federal rights. In the Complaint, he has asserted entitlement to compensatory and punitive damages pursuant to 42 U.S.C. § 1983. Defendants are the Commonwealth of Pennsylvania/Governor Tom Wolf and the Pennsylvania Board of Probation and Parole ("Commonwealth Defendants"); Judges Gehret and Shuter of the Philadelphia Municipal Court and Judge Bright of the Court of Common Pleas ("Judicial Defendants"); the City of Philadelphia/Mayor Jim Kenney; the Philadelphia District Attorney's Office and former Assistant District Attorneys Sian Schafle and Susan E. Affronti; the Defender Association of Philadelphia and Assistant Defender Eric Zuckerman; and Attorney Jeremy Alva. Defendants have filed their motions to dismiss the Complaint. The Court afforded Plaintiff the opportunity to respond and provided a time for Defendants' replies. Having considered the arguments advanced therein, the Court will grant Defendants' motions to dismiss.

**I.  Background**

Plaintiff filed his non-prisoner Complaint asserting a violation of his civil rights on December 8, 2020 (Doc. No. 1). Therein, he indicated his intent to sue Defendants pursuant to

1

42 U.S.C. § 1983. (*Id.*). Plaintiff sued Mr. Zuckerman and the Judicial Defendants in their official capacities (*id.* at pgs. 2—3) but identified the remaining Defendants without specifying whether he intended to sue them in their official or individual capacities. (*Id.* at pgs. 4—5). According to the Complaint, Plaintiff was subject to a traffic stop and was charged with unsworn falsification to authorities, tampering with/fabricating physical evidence, and false identification. (*Id.* at pg. 6). Pursuant to those charges, Plaintiff appeared before Judge Gehret on February 28, 2011 and March 9, 2011. (*Id.*). Plaintiff has alleged that, at the hearing on February 28, Judge Gehret, Mr. Zuckerman, and Ms. Schafle, "LITERALLY (KIDNAPPED)" him and, as a result, he was "HELD HOSTAGE FROM (2/28/11) TO (8/15/18) 7 ½ YRS." (*Id.*). Plaintiff has alleged that he was kidnapped because he changed his name and nationality and that, therefore, the kidnapping constitutes "A HATE CRIME." (*Id.*). He has further alleged that Judge Gehret effected his kidnapping by ordering that the charges against Plaintiff be "BIFURCATED," faking his necessary recusal at the March 9 hearing, and falsifying the February 28 hearing transcripts. (*Id.*).

The Court infers from the Complaint that—because of Judge Gehret, Mr. Zuckerman, and Ms. Schafle's actions—Plaintiff asserts he was incarcerated from February 28, 2011 until May 24, 2011 when he appeared for a hearing before Judge Shuter. At that hearing, Judge Shuter, Ms. Schafle, and another public defender "DID THE SAME THING" and "ACTED WITHOUT JURISDICTION OF ANY LAWFUL TYPE" to effectively kidnap Plaintiff (again). (*Id.*). Further, because of these three hearings (2/28/11; 3/9/11; 5/24/11), Plaintiff was found incompetent to stand trial and alleges that he was confined to a "MENTAL HOSPITAL FOR THE CRIMINALLY INSANE" for twenty months. (*Id.*). Then, Plaintiff has contended that he was further "HELD HOSTAGE" until August 15, 2018 and that, while he was being held hostage, he was deprived of the opportunity to be present to mourn the deaths of those closest to him, his family suffered

2

from the separation, and he was forced to live in conditions of confinement that fell short of minimum standards. (*Id.* at pgs. 6—7; Doc. No. 40, pg. 13). For instance, Plaintiff has alleged that he was "RAPED OF MY HUMAN RIGHTS," subject to strip searches, forced to live in overcrowded and squalid conditions, and denied medical treatment. (Doc. No. 1, pg. 7). Plaintiff's requested relief includes recompense for his lost wages, punitive damages, and immunity from arrest. (*Id.*).[1]

Plaintiff elaborated on the facts that he included in his Complaint in subsequent filings, including responses to Defendants' motions to dismiss.[2] Therein, he has further alleged that he incurred the charges that put him in front of Judge Gehret when he was stopped for speeding[3] and gave his arresting officers identity documents that reflected a name and nationality change that occurred in 2008. (Doc. No. 4, pgs. 5, 18). Plaintiff claimed that the officers treated his

---

[1] Plaintiff's desired award appears to include $12,315,750 for actual damages (*e.g.*, lost wages) as well as further punitive damages. (*Id.*). He has also sought total expungement of his criminal record, return of his grandson, $25,000 for each day he was "HELD HOSTAGE" plus pre-judgment interest, and immunity from arrest in the City of Philadelphia and the Commonwealth of Pennsylvania. (*Id.*). In later filings, he has provided additional details of his injuries and asked for further relief, *e.g.*, "THE IMMEDIATE UNCONDITIONAL RELEASE OF (SHYKEIR SMITH)." (Doc. No. 40, pgs. 10—14).

[2] Plaintiff referred to a number of his responsive filings as "motions," which the Court has construed as responses. Further, the Court, in keeping with its duty to "construe *pro se* complaints liberally . . . will consider" additional facts Plaintiff has included in filings that came after the Complaint. *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005). The allegations in the Complaint are relatively sparse—some Defendants are not mentioned at all—so consideration of additional detail at, *inter alia*, Doc. No. 4, benefits Plaintiff. *See id.* at 726 n.5 (citing *In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999)) ("The 'primary problem raised by looking to documents outside the complaint— lack of notice to the plaintiff'—is therefore not implicated."). To Plaintiff's credit, all of his filings—though procedurally irregular—were meticulously prepared. Plaintiff's effort in clearly writing out his allegations and arguments is unmistakable.

[3] Plaintiff has indicated he was alleged to be traveling 94MPH in a construction zone. (Doc. No. 4, pg. 18).

3

name and nationality change as a crime even though he recorded the change with the Commonwealth's Department of State. (*Id.* at pgs. 6, 18). Plaintiff has suggested that Judge Gehret thus "KNEW HE COULD NOT FIND PLAINTIFF GUILTY OF THE 'ID' CHARGES," so he failed to recuse himself as he should have,[4] "BIFURCATED" and postponed the proceedings, and falsified the February 28 transcript with the purpose of effecting a kidnapping. (*Id.* at pgs. 6—7, 9, 18, 25). Plaintiff has also claimed Judge Gehret and Mr. Zuckerman conspired to carry out the kidnapping. (*Id.* at pgs. 10, 19). Plaintiff faulted Ms. Schafle as well, claiming that "SHE HAD TO HAVE KNOWN" something was wrong because of obvious procedural irregularities, *e.g.*, a "PRELIMINARY HEARING" that should have taken place between fourteen and twenty-one days of the initial hearing was not held until eighty-five days after the initial hearing. (*Id.* at pg. 10). Plaintiff has alleged that Ms. Schafle's acts implicated the District Attorney's Office, the City of Philadelphia, and the Commonwealth. (*Id.* at pg. 11).[5]

Plaintiff told Judge Shuter that he was being held hostage at his hearing on May 24, 2011, but Judge Shuter nevertheless found Plaintiff incompetent to stand trial and, pursuant to that finding, Plaintiff was hospitalized for the next twenty months. (*Id.* at pgs. 7, 11, 30).[6] Then, in

---

[4] Plaintiff has suggested that Judge Gehret had a conflict of interest in hearing Plaintiff's case because he was party to a lawsuit involving the "INTERNATIONAL INDIGENOUS SOCIETY" and the "MOORISH AMERICAN ORGANIZATION" wherefrom Plaintiff obtained his name and nationality change. (*Id.* at pg. 9).

[5] While in the Complaint Plaintiff appeared to fault Ms. Schafle for his kidnapping in equal measure to Judge Gehret and Mr. Zuckerman (Doc. No. 1, pg. 6), he seemed to soften his accusations against her in later filings. For example, here in Doc. No. 4, Plaintiff suggested Ms. Schafle was implicated in his kidnapping by her failure to act despite certainly being alerted to Plaintiff's predicament by gross procedural irregularities. (Doc. No. 4, pgs. 10—11).

[6] Plaintiff has also referenced a July 6, 2011 date at which time a motion for a psychiatric diagnosis was granted "ALL WHILE [Plaintiff] WAS BEING HELD HOSTAGE – LITERALLY," because of kidnappings on February 28, March 9, and May 24. (Doc. No. 40, pg. 7).

4

2013, Plaintiff has alleged that he appeared before Judge Bright and alerted her to the fact that he was being held hostage, but both she and Plaintiff's appointed attorney at the time, Mr. Alva, largely ignored him. (Doc. No. 4, pgs. 22, 30; Doc. No. 40, pg. 8 (identifying July 30, 2013 as the date of the hearing before Judge Bright)). Plaintiff has alleged that, instead of helping him, Judge Bright and Mr. Alva "FORCED" him to enter a nolo contendere plea, pursuant to which he received a six-to-twelve-month sentence. (Doc. No. 4, pg. 7).[7]

Shortly thereafter, the Pennsylvania Board of Probation and Parole ("Board") is alleged to have intervened even though Plaintiff was "NOT ON PAROLE." (*Id.* at pg. 20; Doc. No. 26, pg. 2). According to Plaintiff, the Board fraudulently obtained jurisdiction over him and lengthened his sentence based on "STREET TIME" that he had served when he was on parole from December 8, 1999 to December 23, 2004. (Doc. No. 4, pgs. 8, 20—23).[8] As a result, he was not released until August 15, 2018. (*Id.* at pg. 8). In Plaintiff's view, the Board's actions constituted an unlawful extension of his imprisonment beyond his judicially imposed sentence. (*Id.* at pgs. 8, 30). He sought to remedy this before the Board—requesting immediate release because he had

---

[7] Plaintiff appears to have indicated that at least a portion of his sentence was satisfied by time he had already served: "ON/IN JULY 30, 2013 PLAINTIFF WAS LITERALLY BEING HELD (HOSTAGE) WHEN PLAINTIFF WAS FORCED INTO A NOLO CONTENDERE PLEA AND RECEIVED (6—12) MONTHS TIME SERVED 1 YEAR . . . ." (*Id.* at pg. 7). The Court here observes that to the extent Plaintiff would seek to challenge any period of incarceration pursuant to his conviction before Judge Bright, he would need to show that the "conviction or sentence [had] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus" pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). *Washam v. Stesis*, 321 Fed. Appx. 104, 105–06 (3d Cir. 2009) (citing *Heck*, 512 at 486–87). Because the parties did not raise the *Heck* favorable-termination issue, the Court will not discuss it further but notes that this would appear to be yet another impediment to Plaintiff's pursuit of his case.

[8] Plaintiff has emphasized that he neither "RAN" nor "ABSCONDED" while on parole. (*Id.* at pg. 8).

been denied, among other things, due process—but he was unsuccessful. (*See id.* at pg. 23, 48; Doc. No. 4-1, pg. 18).

The theme that runs through Plaintiff's Complaint and other filings is that the Judicial Defendants, Assistant District Attorneys, Defender Attorneys, and the Board caused Plaintiff to be incarcerated either maliciously or by their indifference. Their acts are supposed to have implicated the entities with which they are associated—the Philadelphia District Attorney's Office, the Defender Association of Philadelphia, the City of Philadelphia, and the Commonwealth. Plaintiff has further alleged that those Defendants who acted maliciously were motivated by his change of name and nationality. The Court will now address Plaintiff's allegations in light of applicable legal principles to explain its decision to grant Defendants' motions to dismiss.

**II.     Standard of Review**

Defendants have moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Rule 12(b)(1) dictates that "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *Bailey v. Wetzel*, No. 2:21-CV-179, 2021 WL 5280926, at *2 n.3 (W.D. Pa. Nov. 12, 2021) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). Where, as here, the challenge goes to the sufficiency of the complaint, the attack is facial, thus triggering the same standard as applies to motions brought under 12(b)(6). *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006) (citation omitted). That is, courts "accept . . . well-pleaded factual allegations as true and

draw all reasonable inferences from those allegations in the Plaintiff['s] favor." *In re Horizon Healthcare*, 846 F.3d at 633; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted) (explaining the standard for Rule 12(b)(6) whereby "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief").

Considering whether a complaint is sufficient under Rule 12(b)(6), courts ask whether the plaintiff provided "a short and plain statement of the claim showing that the pleader is entitled to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim should "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* It need not provide much detail, but it "must contain sufficient factual matter, accepted as true, to state a claim . . . that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As expressed above, courts review all facts in the "light most favorable to the plaintiff" to determine whether "under any reasonable reading of the complaint," he might qualify for his requested relief. *Fowler*, 578 F.3d at 210.[9]

Courts in the Third Circuit use three steps to thus evaluate a complaint, the first being they must identify the elements the plaintiff must plead to pursue his claims against the defendant(s). *Connelly*, 809 F.3d at 787 (citation omitted). Next, courts set aside any allegations that are really just legal conclusions stated as facts. *Id.* Such conclusory statements "are not

---

[9] When a plaintiff has no lawyer to represent his interests, courts are particularly generous in their reading of the complaint. *Tate v. Morris Cty. Prosecutors Off.*, 284 Fed. Appx. 877, 879 (3d Cir. 2008) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007)) (explaining *pro se* litigants' complaints are "liberally construed").

7

entitled to the assumption of truth" that applies to actual facts. *Id.* (citation omitted). At the third and final step, courts look at the "well-pleaded factual allegations" that remain and assume their truth. *Id.* Considering only those facts, a court will "determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation omitted). If they do not, the complaint will be dismissed, though plaintiffs are often afforded the opportunity to amend unless amendment would be futile or "not warranted for some other reason." *Tate*, 284 Fed. Appx. at 879 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 235–37 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (explaining that district courts almost always must "permit a curative amendment," even when the plaintiff didn't ask for an opportunity to amend).

### III.  Legal Analysis

In this matter, Plaintiff filed suit pursuant to 42 U.S.C. § 1983. The elements of such a claim are: "(1) a person deprived [the plaintiff] of a federal right; and (2) the person who deprived him of that right acted under color of state . . . law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citation omitted).[10] The federal right at issue can be a right "secured by the Constitution" or another federal law, but Section 1983 itself is not the "source of substantive rights." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). Further and as indicated above, the alleged deprivation must have been carried out by one who is

---

[10]  The elements of a Section 1983 action for a *conspiracy* to deprive an individual of federal rights are: "(1) the existence of a conspiracy involving state action; and (2) a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient." *Id.* (citation omitted). To the extent Plaintiff alleged a conspiracy among Judge Gehret, Mr. Zuckerman, and Ms. Schafle to kidnap him, the Court bears these elements in mind.

recognized as a "person" for Section 1983's purposes who was "acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citation omitted).

Because Section 1983 does not specify a statute of limitations, the courts "borrow the statute of limitations for a common law of personal injury claim in the forum state." *Udujih v. City of Philadelphia*, 513 F. Supp. 2d 350, 353 (E.D. Pa. 2007). Therefore, Pennsylvania's two-year statute of limitations applies, meaning claimants have two years from the date the action accrued to file a complaint. *Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017). An action accrues "when the plaintiff knew or should have known of the injury upon which his action is based." *Id.* (citing *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)). When it is "apparent on the face of the complaint" that the plaintiff failed to file his complaint before the statute of limitations ran, dismissal is appropriate for failure to state a claim. *Id.* at 157 (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (explaining that the statute of limitations issue must appear on the complaint's face because plaintiffs generally do not have to anticipate affirmative defenses)).

Here, Plaintiff has alleged that because of his name and nationality change he was kidnapped, held hostage for a period of seven and a half years, and mistreated while incarcerated. Plaintiff is adamant that the alleged violation of his rights is that he was kidnapped. For example, in the cover letter he attached to his "Sworn Affidavit," "Memorandum of Law," "Brief Cover Letter," "Brief," and various "Exhibit[s]," Plaintiff has specified that what happened to him was "kidnapping not false imprisonment, but a conscience meeting of minds[.]" (Doc. No. 4, pg. 3). However, Plaintiff has no "private right of action" pursuant to the federal kidnapping statute. *O'Neil v. Beck*, No. CIV.A.1:04-CV-2825, 2005 WL 2030319, at *1 (M.D. Pa. Aug. 4, 2005).

9

As Plaintiff cannot successfully assert kidnapping as the basis of this action, the Court construes his claims as alleging violations of rights secured by the Constitution, including violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, as well as violations of the Eighth Amendment's prohibition of cruel and unusual punishment. This construction is based on Plaintiff's allegations that his hearings in 2011 were procedurally irregular; his name change and/or nationality was a factor in his hospitalization from 2011 to 2013; he was pressured into the plea that preceded his conviction in 2013; without authority, the Board held him years after he completed the sentence Judge Bright imposed; and he was mistreated while imprisoned.[11] Though these allegations are facially grievous, they are untenable for the reasons explained herein.

### A. Dismissal is appropriate as to all Defendants because Plaintiff failed to file suit before the statute of limitations expired

Pennsylvania's two-year statute of limitations applies to Plaintiff's action. The statute of limitations started running when Plaintiff "knew or should have known of the injury upon which his action is based." *Wisniewski*, 857 F.3d at 158. Plaintiff alleges that the various Defendants wronged him between 2011 and 2013, yet he did not file the Complaint until December 8, 2020. Even Plaintiff's alleged release date—August 15, 2018—predated the filing date by more than two years. This matter of timeliness was brought to Plaintiff's attention by Defendants the Defender Association of Philadelphia and Mr. Zuckerman (Doc. No. 15, pg. 4); Mr. Alva (Doc.

---

[11] Because other deficiencies of Plaintiff's Complaint warrant granting Defendants' motions to dismiss, the Court need not endeavor to more precisely identify the federal rights at issue. To the extent Plaintiff alleged mistreatment while incarcerated, he did not associate his mistreatment with any of the Defendants. That is problematic for Plaintiff as "liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. *Nguyen Vu v. City of Philadelphia*, No. CIV.A. 10-0953, 2012 WL 1222628, at *9 (E.D. Pa. Apr. 11, 2012) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71, 375–77 (1976)).

10

No. 28, pgs. 5, 7); the former Assistant District Attorneys (Doc. No. 33, pgs. 3, 10); and the City (Doc. No. 34, pgs. 8—9). Nonetheless, Plaintiff has not in any way indicated he can show his claim accrued at some point in the two years that preceded the filing date. Accordingly, because it is clear from the face of the Complaint that the statute of limitations had run well before Plaintiff presented his claims to the Court, dismissal pursuant to Rule 12(b)(6) is appropriate. *Wisniewski*, 857 F.3d at 157; *Schmidt*, 770 F.3d at 249 (citation omitted). Further, the Court will not give Plaintiff an opportunity to amend because it appears it would be futile. *See Alston*, 363 F.3d at 235. Not only is there no indication Plaintiff could overcome the timeliness issue but, as the Court discusses herein, there are other significant obstacles to Plaintiff's pursuit of this case.

> B. *The Court lacks jurisdiction as to the Commonwealth Defendants and Judicial Defendants in their official capacities because they are protected from suit by the Eleventh Amendment*

Even if timeliness was not an impediment to Plaintiff's suit, the Court would be compelled to grant the Commonwealth Defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The Eleventh Amendment is a jurisdictional barrier that protects the States "from suits brought in federal courts by private parties." *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008); *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 730 F.3d 291, 318 (3d Cir. 2013). States are protected by the Eleventh Amendment unless they clearly consent to be sued, *Allen v. New Jersey State Police*, 974 F.3d 497, 505 (3d Cir. 2020), or Congress specifically and obviously expresses its intent to take their protection away. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996). Where neither exception applies, federal courts lack jurisdiction to grant relief against the States. *Christ the King Manor, Inc.*, 730 F.3d at 318.

Plaintiff has here sued the Commonwealth. However, the Commonwealth has not consented to be sued in federal court. *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citing 42 Pa. Cons. Stat. § 8521(b)). Neither has Congress abrogated Eleventh Amendment immunity for purposes of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 (1989). Therefore, even if the Complaint had been timely, it would be incumbent on the Court to dismiss it with respect to the Commonwealth pursuant to Rule 12(b)(1).[12] Because the Commonwealth's Eleventh Amendment immunity extends to its "agencies or departments" *Afrasiabipour v. Pennsylvania Dep't of Transportation*, 469 F. Supp. 3d 372, 383 (E.D. Pa. 2020), the Court would have to dismiss the Complaint with respect to the Board as well. *Spuck v. Pennsylvania Bd. of Prob. & Parole*, 563 Fed. Appx. 156, 158 (3d Cir. 2014) (citing *Harper v. Jeffries*, 808 F.2d 281, 284 n.4 (3d Cir. 1986)) ("[T]he Eleventh Amendment affords the Board protection from suit in an action brought pursuant to 42 U.S.C. § 1983."). The same goes for the Commonwealth officials who were sued in their official capacities, which is "no different from a suit against the State itself." *Will*, 491 U.S. at 71.[13] The unified judicial system—including the Court of Common Pleas and the Philadelphia Municipal Court—is an arm of the Commonwealth. *Callahan v. City of Philadelphia*, 207 F.3d 668, 672

---

[12] The Court further notes that dismissal of the Complaint as to the Commonwealth is appropriate under Rule 12(b)(6) because "a State is not a person within the meaning of § 1983." *Id.* at 64.

[13] State officials are vulnerable to suit in their personal capacities. *Dalal v. Krakora*, No. CV 21-3439 (MCA), 2021 WL 4932786, at *3 (D.N.J. Oct. 22, 2021) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). However, Plaintiff has made no allegation against a Commonwealth official in his or her personal capacity. Plaintiff named Governor Wolf as a defendant (Doc. No. 1, pg. 5), but has not advanced allegations against him in any capacity.

(3d Cir. 2000). Therefore, because Plaintiff sued the Judicial Defendants in their official capacities, the Eleventh Amendment shields them as well.[14]

    *C. Plaintiff has not plausibly alleged a Section 1983 claim against the City or the Philadelphia District Attorney's Office*

Unlike the States, municipalities, *e.g.,* cities, may be sued pursuant to Section 1983 for depriving individuals of their federal rights. However, a municipality is only liable for depriving an individual of his or her federal rights if the deprivation is caused by "an official policy, practice, or custom." *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978)). Accordingly, to state a

---

[14]     Plaintiff specified that he was suing the Judicial Defendants in their official capacities; however, even if Plaintiff had sued the judges in their individual capacities, he would have run up against judicial immunity. Pursuant to judicial immunity, "[j]udges are immune from liability for damages for actions taken in performance of their duties." *Stankowski v. Farley*, 251 Fed. Appx. 743, 746 (3d Cir. 2007) (citing *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972); *Stump v. Sparkman*, 435 U.S. 349 (1978)). Judicial immunity applies even when judges act "maliciously" or "in excess of [their] authority." *Kinnard v. George*, 652 Fed. Appx. 96, 98 (3d Cir. 2016) (citing *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam)). The exceptions to judicial immunity are narrow—a judge may be held liable only for "nonjudicial actions" or for actions taken in "clear absence of all jurisdiction." *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769 (3d Cir. 2000) (citations omitted).

    Plaintiff has alleged Judges Gehret and Shuter acted criminally to accomplish his kidnapping, and that Judge Gehret conspired with Mr. Zuckerman to kidnap him. Plaintiff has also alleged that Judge Gehret lacked jurisdiction and, further, that none of the judges/courts before whom he appeared in 2011 and 2013 had jurisdiction. (Doc. No. 4, pgs. 13, 31; Doc. No. 26, pg. 2). However, Plaintiff's allegations in this regard are conclusory. For instance, he has declared that the Judicial Defendants lacked jurisdiction without providing supporting facts to that effect. Therefore, even reading Plaintiff's allegations in the light most favorable to Plaintiff, the Court discerns that the Judicial Defendants' alleged actions, however objectionable, were taken in the course of their performance of judicial duties, that is, presiding over hearings where Plaintiff was a criminal defendant. Thus, it appears that there was no "clear absence of all jurisdiction," that would have taken the judges' actions outside the purview of protected acts. *Id.* *See Thompson v. Rush*, No. 1:15-CV-01927, 2018 WL 7636494, at *6 (M.D. Pa. Oct. 24, 2018), *report and recommendation adopted*, No. 1:15-CV-1927, 2019 WL 1242442 (M.D. Pa. Mar. 18, 2019) (finding entitlement to judicial immunity where plaintiff alleged the defendant judge "handed down a void sentence" to "cover up" a "[k]idnapping" because that act was taken "in [the judge's] capacity as a judge overseeing a criminal case").

13

legally sufficient claim against a city pursuant to Section 1983, plaintiffs must allege that there was an official policy, practice, or custom attributable to the municipality, and further show a causal link between that policy and the alleged injury. *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)); *Walker v. City of Philadelphia*, No. CIV.A. 09-2071, 2009 WL 3103733, at *1 (E.D. Pa. Sept. 18, 2009), *aff'd*, 436 Fed. Appx. 61 (3d Cir. 2011) ("[T]he City of Philadelphia is not subject to liability in a civil rights action absent a showing that unlawful actions were taken pursuant to . . . policies, practices, customs, regulations or enactments.").

Plaintiff has sued the City and Mayor Jim Kenney, but nowhere alleges that a "policy or custom" caused the alleged violations of his federal rights. *Harper v. City of Philadelphia*, No. 18-CV-365, 2018 WL 5784549, at *2 (E.D. Pa. Nov. 2, 2018).[15] Therefore, dismissal of Plaintiff's claims against the City would be appropriate pursuant to Rule 12(b)(6) even if he had timely filed suit. Because the Philadelphia District Attorney's Office is not a separate legal entity, the Court would also dismiss Plaintiff's Complaint as to the District Attorney's Office. *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997); *see also Thompson v. Police Dep't of Philadelphia*, No. CIV.A. 10-6083, 2011 WL 4835831, at *2 (E.D. Pa. Oct. 12, 2011) (citing cases wherein the Third Circuit has held that "local prosecutorial offices are not legal entities separate from the local governments of which they are a part and, consequently, that they may not be sued under § 1983.").[16]

---

[15] Nor has Plaintiff proffered *any* allegation that Mayor Jim Kenney acted as to deprive Plaintiff of his federal rights. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (explaining that in a Section 1983 action "liability cannot be predicated solely on the operation of *respondeat superior*").

[16] *See also DeSousa v. City of Philadelphia*, No. CIV.A. 11-3237, 2012 WL 6021319, at *2 (E.D. Pa. Dec. 4, 2012) ("To allege a plausible § 1983 claim against the District Attorney's Office, DeSousa must identify a custom or policy that caused a violation of his constitutional rights, and must 'specify what exactly that policy or custom was.'").

> D. *Plaintiff has not plausibly alleged a Section 1983 claim against the former Assistant District Attorneys*

In the Complaint, Plaintiff alleged that Ms. Schafle was an Assistant District Attorney who "KIDNAPPED" him on February 28, 2011 because he "CHANGED [his] NAME AND NATIONALITY," and that she "DID THE SAME THING" on May 24, 2011. (Doc. No. 1, pg. 6). He did not address Ms. Affronti in the Complaint, but later indicated that she violated his federal rights in the course of her work opposing his release in 2013 post-conviction proceedings. (Doc. No. 4, pgs. 39—42; Doc. No. 35, pgs. 3—5; Doc. No. 40, pg. 3). As Ms. Schafle and Ms. Affronti acknowledge, Plaintiff did not specify whether he intended to sue them in their official or individual capacities. Therefore, the Court must "interpret the pleading to ascertain what plaintiff should have stated specifically." *Gregory v. Chehi*, 843 F.2d 111, 119 (3d Cir. 1988). Because Plaintiff requested punitive damages (Doc. No. 1, pg. 5), which are not recoverable against defendants in their official capacities, *id.* at 120, the Court construes the pleadings as naming the former Assistant District Attorneys as defendants in their official and individual capacities.

A lawsuit against a municipal official in his or her official capacity is no different than the lawsuit against the entity the official represents. *Brown v. Riazzi*, No. CV 17-708, 2018 WL 2435185, at *6 n.10 (W.D. Pa. May 30, 2018) (citing *Monell*, 436 U.S. at 690 n.55). Therefore, dismissal of Plaintiff's Complaint against Ms. Schafle and Ms. Affronti in their official capacities would be appropriate for the same reasons the dismissal of Plaintiff's Complaint is proper as to the City and Philadelphia District Attorney's Office.

In their individual capacities, Ms. Schafle and Ms. Affronti are protected by prosecutorial immunity which provides "absolute immunity from liability for money damages under § 1983 for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.'"

15

*Walker*, 2009 WL 3103733, at *2 (citing *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). "Prosecutorial immunity applies even when the prosecutor acted willfully, maliciously, or in bad faith." *Nguyen Vu*, 2012 WL 1222628, at *8. From Plaintiff's Complaint, it is clear that Ms. Schafle and Ms. Affronti's alleged bad acts were done in the course of their performance of prosecutorial duties. Though Plaintiff has alleged Ms. Schafle "KIDNAPPED" him in concert with Judges Gehret and Shuter because he changed his name and nationality, those allegations clearly stem from Ms. Schafle's presentation of the Commonwealth's case against him at the hearings in 2011. (Doc. No. 1, pg. 6). Thus, Ms. Schafle is shielded from suit in her individual capacity by prosecutorial immunity.

The same is true of Ms. Affronti. It is clear from Plaintiff's filings that the basis of his suit against Ms. Affronti is her representation of the Commonwealth's interests regarding Plaintiff's bid for immediate release. (Doc. No. 35, pg. 3). Before the Court, Plaintiff has claimed that Ms. Affronti lied in pursuit of his continued confinement and thereby concealed his initial abduction. However, prosecutorial immunity shields prosecutors from suit when they perform "adversarial acts . . . during post-conviction proceedings." *Weir v. Napiorski*, No. 21-1243, 2021 WL 5320855, at *2 (3d Cir. Nov. 16, 2021). *See Nguyen Vu*, 2012 WL 1222628, at *8 ("[A]bsolute immunity extends to a prosecutor's conduct during all stages of criminal proceedings, including appellate and post-conviction proceedings where the prosecutor is acting as an advocate for the State."). Thus, to the extent the Court finds among Plaintiff's filings an articulation of claims against Ms. Affronti in her individual capacity, she is shielded from suit by prosecutorial immunity. The Court here reiterates that Plaintiff's first-order problem is that his claims against Ms. Schafle and Ms. Affronti relate to their conduct over seven years ago. Even if

Plaintiff could demonstrate they were not protected by prosecutorial immunity, his efforts would be futile because of untimeliness.

> E. *Plaintiff has not plausibly alleged a Section 1983 claim against Assistant Defender Mr. Zuckerman, the Defender Association of Philadelphia, or Mr. Alva*

When public defenders execute their traditional lawyerly functions to represent "a defendant in a criminal proceeding," they do not act "under color of state law" for purposes of Section 1983 liability. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Webb v. Chapman*, 852 Fed. Appx. 659, 660 (3d Cir. 2021) (listing cases). The same is true of attorneys who are appointed by the courts to represent defendants in criminal proceedings. *McIntyre v. Cty. of Center*, 411 Fed. Appx. 450, 452 (3d Cir. 2011) (citing *Black v. Bayer*, 672 F.2d 309, 314 (3d Cir. 1982), *abrogation on other grounds recognized by*, *D.R. ex rel. L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1368 n.7 (3d Cir. 1992)). A public defender may be held liable for "intentional misconduct" that comes under the color of state law "by virtue of alleged conspiratorial action with state officials that deprives" the defender's client of his federal rights. *Tower v. Glover*, 467 U.S. 914, 923 (1984). However, an individual who is alleged to have been so aggrieved must do more than assert a bare allegation of conspiracy among his attorney and state officials. Rather, he must "allege conspiracy with particularity," that is, make "factual allegations of combination, agreement, or understanding among all or between any of the defendants or coconspirators to plot, plan, or conspire to carry out the alleged chain of events." *Miskovitch v. Walsh*, No. CIV.A. 08-1474, 2009 WL 3061992, at *5 (W.D. Pa. Sept. 22, 2009) (citing *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)).

Regarding Mr. Zuckerman, Plaintiff has alleged that he was among the three defendants responsible for kidnapping him because of his name and nationality change. (Doc. No. 1, pg. 6). Mr. Zuckerman is shielded from suit to the extent he was acting in a representative capacity,

17

*Polk Cty.*, 454 U.S. at 325, however, the Court acknowledges that Plaintiff's filings appear to indicate Mr. Zuckerman was not his attorney.[17] Allegations of that nature have the potential to bring Mr. Zuckerman's conduct under the color of state law. Yet, to the extent the Court reads Plaintiff's allegations as indicating Mr. Zuckerman did not act as his attorney and conspired with Judge Gehret and Ms. Schafle to kidnap him, his articulation of those allegations lacks the particularity needed to state a plausible conspiracy claim. *See Miskovitch*, 2009 WL 3061992, at *5. Plaintiff broadly asserted Mr. Zuckerman's participation in a conspiracy to kidnap him but has not alleged facts that show an agreement or understanding to that effect. While Plaintiff could perhaps cure this defect with a more detailed amended complaint, there remains the issue of the statute of limitations where Mr. Zuckerman's alleged bad acts date back to 2011. As the Court has repeated throughout this opinion, the untimeliness of Plaintiff's action means amendment would be futile.

Turning to the Defender Association of Philadelphia, it appears Plaintiff's case against that entity is premised entirely upon its employ of Mr. Zuckerman. It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Accordingly, Plaintiff could not maintain this action against the Defender Association.

Mr. Alva—the court-appointed attorney who represented Plaintiff before Judge Bright in 2013—is identified but not mentioned further in Plaintiff's Complaint. However, in later filings

---

[17] Plaintiff has suggested Mr. Zuckerman was not his lawyer in 2011 and that, at that time, he did not have a lawyer, but has also indicated Mr. Zuckerman "FELT COMPELLED TO SECRETIVELY HAND [him]" what Plaintiff believed were "PRELIMINARY HEARING NOTES OF TESTIMONY." (Doc. No. 4, pg. 19).

Plaintiff has averred that he was displeased with Mr. Alva's representation. According to Plaintiff, he told Mr. Alva that he was being held hostage, but Mr. Alva failed to take appropriate action and ultimately pressured Plaintiff into taking a nolo contendere plea and accepting a six-to-twelve-month sentence. (Doc. No. 4, pg. 30; Doc. No. 40, pg. 5; Doc. No. 30, pg. 2 (explaining that in failing to pursue Plaintiff's immediate release, Mr. Alva, Judge Bright, and the unnamed Assistant District Attorney who represented the Commonwealth that day also kidnapped him)).

From those allegations it is clear Plaintiff was disappointed with Mr. Alva's work on his behalf; however, it is also clear that Mr. Alva was working in a representative capacity and not under color of state law. Therefore, Plaintiff has failed to allege facts in support of the essential "color of state law" element of a Section 1983 case as to Mr. Alva and dismissal is appropriate pursuant to Rule 12(b)(6). As the Court has done throughout this opinion, it reiterates that insofar as amendment might cure the deficiency of Plaintiff's pleadings in this regard, the statute of limitations makes amendment futile. According to the facts as Plaintiff presented them, Mr. Alva's participation in Defendants' deprivation of Plaintiff's federal rights dates back to 2013.

### IV. Conclusion

In summary, the statute of limitations issue is the clearest impediment to Plaintiff proceeding with his case against Defendants. Because it is obvious from the face of the Complaint that Plaintiff brought this matter before the Court too late, it is appropriate to order the matter dismissed. Further, because there is no indication Plaintiff might allege events that are recent enough to remedy that defect, the Court will not give Plaintiff the opportunity to amend his complaint on account of its futility. Accordingly, the Court will dismiss the Complaint with prejudice in its entirety. While the Court understands the result may be

interpreted by Plaintiff as an unfair deprivation of his opportunity to fully present his case to the Court, the applicable legal principles require dismissal even at this early juncture. The Court will enter a separate order in accordance with this memorandum opinion.

s/ Alan N. Bloch  
United States District Judge

ecf:    Counsel of record

cc:    Nathaniel Leroy Elliott  
      315 S. Broad Street  
      Unit #0529  
      Philadelphia, PA 19107